UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

CAROL FISCHER,                                             :

                    Plaintiff,           :

         -against-                             :

NEW YORK STATE DEPARTMENT OF LAW,      :
the Office of the Attorney General of the
State of New York, a division of the                   :
New York State Department of Law,
                              :

                  Defendant.          X
------------------------------------------------------------- 

**12 Civ. 0421 (ALC)(RLE)**

**ORDER**

ANDREW L. CARTER, JR., District Judge:

## I.  Introduction

Plaintiff brings federal and state law claims against Defendant, alleging unlawful

discrimination due to her disability.  Plaintiff was previously employed at the Office of the

Attorney General of the State of New York ("OAG") where she served as an Assistant Solicitor

General in the Division of Appeals and Opinions.  After disclosing her disability to the OAG,

Plaintiff received an accommodation for several years while performing her job.  She was

subsequently terminated from the OAG, and the parties dispute whether she was receiving an

accommodation at the time her employment ended.  Plaintiff brings the first cause of action

pursuant to the Rehabilitation Act, 29 U.S.C. § 794, for failure to reasonably accommodate her

disability.  Plaintiff also argues she was terminated because of her disability.  The second cause

of action alleges a violation of N.Y. Exec. Law § 297(9) for disability discrimination.  The

parties engaged in discovery until January 14, 2013, and Defendant moved for summary

judgment on February 12, 2013.  Plaintiff filed an opposition on April 8, 2013, and Defendant

filed its reply on April 29, 2013.  While there are genuine issues of material fact that preclude

summary judgment on Plaintiff's federal claim, Plaintiff's state law claim is barred by the

Eleventh Amendment.  Accordingly, Defendant's Summary Judgment Motion is GRANTED in part and DENIED in part.

## II.     Discussion

The facts of this case are set forth in the parties' papers and Local Rule 56.1 Statements, and the Court assumes familiarity therewith.  Defendant argues the Court should grant summary judgment because the OAG provided a reasonable accommodation to Plaintiff after being notified of her condition, and Plaintiff was unable to perform the essential functions of her job even with an accommodation.  Further, Plaintiff's employment was terminated because of her repeated failures to file briefs on-time and not because of any discriminatory motivation. Plaintiff claims with a reasonable accommodation, she was able to perform her job functions adequately, but Defendant failed to grant her any accommodation after October 11, 2010. Plaintiff also challenges the reasonableness of the accommodation that was offered by Defendant from 2003 to 2010 and the basis for her termination.

## A. *Standard of Review*

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248.  An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted).

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. Eastway Constr. Corp. v. City of N.Y., 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. See Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

**B.** *Rehabilitation Act Claim*

"Section 504 of the Rehabilitation Act prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (citing 29 U.S.C. § 794(a)). Under the Act, a discrimination claim can be based on an employer's failure to make a reasonable accommodation for a disabled employee. Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir. 1995). To state a prima facie case under this theory, the plaintiff must show: "(1) that [s]he is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of [her] disability, (3) that with reasonable accommodation, [s]he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." Carter v. Potter, No. 06 Civ. 3854 (JG)(LB), 2008 WL 1848639, at *5 (E.D.N.Y. Apr. 23, 2008) (citing Stone v. City of Mt. Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997)). Only the third and fourth elements are disputed in this case.[1]

As to the third element, Defendant contends Plaintiff cannot show she could perform the essential duties of an Assistant Solicitor General even with a reasonable accommodation. In particular, one of Plaintiff's duties was to file briefs by the deadline or seek an extension. (Pl.'s Resp. to Def.'s L. R. 56.1(b) Stat. ¶ 10, Dkt. No. 34; Underwood Decl. ¶ 8, Dkt. No. 23; Gutman Decl. ¶ 4, Dkt. No. 24.) Yet, according to Defendant, Plaintiff was unable to satisfy this duty while working with an accommodation. Defendant points to Plaintiff's failure to file timely briefs in the Caroselli and Maxwell cases in 2009. (Pl.'s Resp. to Def.'s L. R. 56.1(b) Stat. ¶¶ 93-

---

[1] In its Memorandum of Law, Defendant states, "Even assuming for purposes of this motion, that plaintiff can satisfy the first two elements, plaintiff cannot show either [of the third or fourth elements] . . . ." (Def.'s Mem. 16, Dkt. No. 22.) Defendants offer no arguments as to why the first two elements are not satisfied. Thus, the Court takes Defendant's statement to mean Plaintiff has put forth sufficient evidence to satisfy the first two elements.

96, 101, 104-05, Dkt. No. 34.)  Plaintiff counters that she received several "highly effective" evaluations from 2004 to 2009 while working with an accommodation, which evidences that she was "otherwise qualified" to be an Assistant Solicitor General. (Def.'s Resp. to Pl.'s L. R. 56.1(b) Stat. ¶¶ 192-96, Dkt. No. 39; Fischer Decl., Exs. 10-14, Dkt. No. 35.)  Additionally, Plaintiff claims her treating physician confirmed she could perform her job duties with an accommodation. (Meister Decl., Ex. 2 at 47, Dkt. No. 36.)

"[T]he plaintiff bears the burden of proving either that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions." Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995); McMillan v. City of N.Y., 711 F.3d 120, 126 (2d Cir. 2013) ("In discrimination claims based . . . on failures to accommodate, the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.'" (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009))).[2]  In determining whether an employee can perform the essential functions of her job, "a court must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." McBride, 583 F.3d at 98. But, the inquiry does not end there; other relevant factors, none of which are dispositive, include written job descriptions, the amount of time spent on the job performing the function, the work experience of past employees in the position, and the work experience of current employees in similar positions. Stone, 118 F.3d at 97; see also McMillan, 711 F.3d at 126 ("[A] court must

---

[2] Even though this case deals with a claim under the Americans with Disabilities Act ("ADA"), the Second Circuit has explained the Rehabilitation Act and the ADA are generally interpreted using the same standards. McElwee, 700 F.3d at 640 (describing the standards adopted by the Rehabilitation Act and the ADA as nearly identical); Cercpac v. Health and Hosps. Corp., 147 F.3d 165, 167 (2d Cir. 1998) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'— entities, these provisions [Section 504 of the Rehabilitation Act and the ADA] purport to impose precisely the same requirements.")

conduct 'a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'" (quoting Borkowski, 63 F.3d at 140)).

The Second Circuit has cautioned against deciding whether an employee can perform essential job functions "based on 'unthinking reliance on intuition about the methods by which jobs are to be performed.'" McMillan, 711 F.3d at 126 (quoting Borkowski, 63 F.3d at 140). The Circuit has also held an accommodation which requires the elimination of essential job functions or the excusal or prior misconduct is not reasonable. Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) ("[T]hough 'reasonable accommodation' may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, 'reasonable accommodation' does not mean elimination of any of the job's essential functions."); McElwee, 700 F.3d at 64 ("A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law."); see also Fink v. N.Y. City Dep't of Pers., 53 F.3d 565, 567 (2d Cir. 1995) ("[The Act] does not require the perfect elimination of all disadvantage that may flow from the disability; it does not require a lowering of standards, nor that the employer 'make 'fundamental' or 'substantial' modifications' in order to eliminate the disadvantages flowing from the disability.") (internal citations omitted).

Based on the evidence in the record, there is a genuine issue of fact as to whether Plaintiff could perform the essential functions of an Assistant Solicitor General with a reasonable accommodation. On one hand, Defendant put forth evidence that Plaintiff defaulted on two deadlines – Caroselli and Maxwell – while working under an accommodation and defaulted on two more deadlines – Weiner and Elwell – during the time period where it is disputed whether an accommodation was provided. (Pl.'s Resp. to Def.'s L. R. 56.1(b) Stat. ¶¶ 93-96, 101, 104-05, 109-13, 118-24, Dkt. No. 34.) Defendant also offers testimony from Solicitor General

6

Underwood and Plaintiff's supervisor that meeting deadlines for filing briefs is an essential duty of an Assistant Solicitor General, and Plaintiff's failure to file timely briefs was a serious concern. (Underwood Decl. ¶ 8, Dkt. No. 23; Gutman Decl. ¶¶ 4, 14, Dkt. No. 24.) Finally, several of Plaintiff's performance evaluations described her work as inconsistent and noted a concern for Plaintiff's failure to submit her briefs to reviewers in a timely and reliable manner. (Underwood Decl. ¶¶ 12-13, Ex. B, Dkt. No. 23; Gutman Decl. ¶¶ 8-10, Ex. I, Dkt. No. 24.) Defendant claims upon discovering the default in Weiner, it determined Plaintiff was no longer performing in accordance with the minimum expectations, and she was subsequently terminated. (Underwood Decl. ¶¶ 7-10, Dkt. No. 23; Gutman Decl. ¶ 20, Ex. BB, Dkt. No. 24.)

On the other hand, Plaintiff received significantly positive performance evaluations during the seven years throughout which she was indisputably afforded an accommodation. Those evaluations specifically address Plaintiff's ability to meet filing deadlines. For example, the performance evaluation from 2004 to 2005 indicated, "She [Plaintiff] meets deadlines, keeps her reviewers informed as to the status of her cases, and is available and responsive to their requests for information or to discuss cases." (Fischer Decl., Ex. 10 at 6, Dkt. No. 35.) Likewise, an evaluation from 2005 to 2006 stated, "Ms. Fischer has continued to be diligent about meeting court and internal deadlines, complying with administrative obligations, and adhering to office leave policies." (Id., Ex. 11 at 7.) In addition, there is no disciplinary record for Plaintiff's failure to make timely submissions until the Caroselli default. (Id. ¶ 54; Gutman Decl. ¶ 11, Dkt. No. 24; Pl.'s Resp. to Def.'s L. R. 56.1(b) Stat. ¶¶ 91-92, Dkt. No. 34.)

Moreover, the record suggests Defendant was unable to determine whether Plaintiff was at fault for the default in the Maxwell case. According to Plaintiff's supervisor, Benjamin Gutman, "[I]t was not clear whether [Plaintiff] was at fault [for missing the filing deadline], or

7

whether the court had given her incorrect information about whether the pro se petitioner's brief had been accepted for filing." (Gutman Decl. ¶¶ 16-17, Ex. T, Dkt. No. 24.) Mr. Gutman "concluded no action should be taken against Ms. Fischer based on the <u>Maxwell</u> default. [Plaintiff] did not receive a counseling memorandum about her conduct in the case; nor was any disciplinary action taken against her." (<u>Id.</u> ¶ 17.) Viewing the facts in the light most favorable to Plaintiff, as the Court is required to do at this stage, the record reflects only one default, <u>Caroselli</u>,[3] throughout Plaintiff's long history of employment, that Defendant conclusively determined was caused by Plaintiff while working under an accommodation.[4] Defendant's evidence simply does not permit the Court to conclude as a matter of law that Plaintiff was unable to do her job with a reasonable accommodation. Such conclusions necessitate a fact-intensive inquiry into the essential job functions of an Assistant Solicitor General and the point in time, if any, when Plaintiff was no longer performing those functions adequately.

Also with respect to the third element, Plaintiff argues the accommodation provided by Defendant was, or became, unreasonable at some unspecified time. Defendant asserts this argument is inappropriate because any such allegations are astonishingly absent from the Complaint. The Court agrees. It is well-settled in this Circuit that a party may not add allegations to the Complaint through arguments raised in motion papers. <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998); <u>IIT v. Cornfeld</u>, 619 F.2d 909, 915 (2d Cir. 1980), <u>overruled by</u>, <u>Morrison v. Nat'l Austl. Bank Ltd.</u>, 130 S. Ct. 2869 (2010); <u>Aiken v. Nixon</u>,

---

[3] As a result of the <u>Caroselli</u> default, Solicitor General Underwood determined that, while "an extremely serious incident," Plaintiff would receive a counseling memorandum and not be terminated for the failure to file her brief by the deadline. (Gutman Decl. ¶ 14, Ex. S, Dkt. No. 24; Underwood Decl. ¶ 8, Dkt. No. 23.) The counseling memorandum noted, "When asked why you [Plaintiff] did not notify your reviewer on your own about the missed deadline for the <u>Caroselli</u> appeal, or notify your reviewer that you would be needing an extension of time before the expiration of the court's deadline, you stated that you suffer from a medical condition that negatively affected your judgment." (Gutman Decl., Ex. S, Dkt. No. 24.)

[4] Plaintiff admits she was granted an accommodation until October of 2010. (Hathaway Aff., Ex. A at 58-59, Dkt. No. 31.) After that time, the parties dispute whether Plaintiff received an accommodation from the OAG.

236 F. Supp. 2d 211, 221 (N.D.N.Y. 2002).  The seven-page Complaint alleges, "Plaintiff could

perform the essential functions of her job . . . with an accommodation that would permit her to

work from home for several days a month," (Compl. ¶ 11, Dkt. No. 1), and Plaintiff submitted a

letter from her doctor "requesting that [she] receive a medical accommodation that would enable

her to work from home several days a month." (Id. ¶ 12.)  In fact, the Complaint goes so far as to

characterize the accommodation provided by the OAG as "reasonable." (Id. ¶ 28.)  Plaintiff will

not be heard to challenge the reasonableness of the accommodation for the first time in

opposition papers to a Motion for Summary Judgment.

A genuine dispute of material fact likewise exists as to whether an extension of the

existing accommodation was provided after October 11, 2010.  Defendant argues there is no

support for the contention that Plaintiff was denied an accommodation after October of 2010.

Instead, Defendant claims, at most, there was a delay in granting the accommodation, but this

delay was not motivated by discriminatory intent.  Defendant draws support for this theory from

Plaintiff's deposition.  Specifically, Plaintiff describes her inaction after a November 1, 2010

email sent to Mary Anderson, the OAG's medical leave administrator, inquiring whether her

latest physician report was received, and a subsequent phone call with the OAG's ADA

Coordinator, Kelly Wheeler:

> Q:    Following November 1st, 2010, did you inquire of anyone else at the
> Attorney General's office about the status of your accommodation?
> A:    No, I did not.
> Q:    Did anyone ever tell you that the renewal had been denied following
> October or November 2010?
> A:    No.  It was my belief that it was still pending, my request was pending.

(Meister Decl., Ex. 1 at 80-81, Dkt. No. 36.)  Plaintiff admits she made little inquiry about the

renewal of her accommodation after the expiration of the October 11, 2010 written agreement,

and other personnel in the OAG claim they believed the accommodation had been extended,

including Plaintiff's supervisor. (Id. at 79-81; Gutman Decl. ¶¶ 5, 23, Dkt. No. 24; Underwood

Decl. ¶ 14, Dkt. No. 23; Smoler Decl. ¶ 14, Dkt. No. 27.)  Indeed, Ms. Wheeler claimed she told

Plaintiff over the phone on November 1, 2010 that her accommodation had been renewed:

> Q:      Do you actually recall having a conversation with Carol Fischer about this
> letter [October 10, 2010 letter from Plaintiff's physician requesting another
> extension of Plaintiff's accommodation]?
> A:      Yes.
> Q:      By actual recollection, I mean you remember what was said?
> . . .
> A:      . . . And I said but I did receive it and, oh, by the way, it was addressed to
> Mary, remember me, so to speak, and you're good for the next six months.

(Meister Decl., Ex. 4 at 68, Dkt. No. 36; Wheeler Decl. ¶ 13, Dkt. No. 25.)  Ms. Wheeler denies

telling Plaintiff during this conversation that she should expect a written agreement

memorializing the extension from Arlene Smoler, the OAG's Employment Counsel.  Ms. Smoler

also denies ever telling Plaintiff that future agreements needed to be in writing. (Wheeler Decl.

¶¶ 9, 11-13, Dkt. No. 25; Smoler Decl. ¶¶ 14-15, Dkt. No. 27.)  Moreover, Plaintiff's

accommodation had been consistently extended without a written agreement from 2007 until

2010 in consecutive six-month intervals. (Pl.'s Resp. to Def.'s L. R. 56.1(b) Stat. ¶ 28, Dkt. No.

34; Smoler Decl. ¶¶ 6, 8, Dkt. No. 27.)  Defendant argues the testimony from Ms. Wheeler and

Ms. Smoler in conjunction with the fact that an accommodation had been routinely granted for

over seven years evidences there may have been a delay in the October 2010 extension, but there

was no denial.

      But Defendant bases its argument on only part of the evidence.  In reality, Plaintiff went

on to say while being deposed:

Q:      Did you discuss the status of your accommodation with anyone outside the Office of the Attorney General between November 1st, 2010 and your termination?

A:      I discussed it with my therapist, Evelyn Lief.

Q:      What, if anything, did you say to her?

A:      I said that I put in for the accommodation and that I hadn't heard back yet and that I was somewhat apprehensive about that.

Q:      Had anyone given you any indication that it might not be renewed?

A:      No one had spoken to me beyond the conversations that I've indicated. My apprehension came from the totality, the total history of my relationship with the office concerning the accommodation, the fact that it had been grudgingly given, I felt, and the fact that it had become increasingly formal, that Ms. Smoler indicated that she wanted it in writing and was unwilling to tack on an extra month to the agreement to make it run for the six months after it was signed.

(Meister Decl., Ex. 1 at 86-87, Dkt. No. 36; Hathaway Aff., Ex. D at 41, Dkt. No. Dkt. No. 31.) Plaintiff's apprehension, as she referred to it, was based on her belief that Ms. Smoler required all accommodations from May 2010 forward to be in writing:

Q:      What lead [sic] you in that conversation [on November 1, 2010 with Ms. Wheeler] to believe there would be another written agreement?

A:      My conversation in email exchanges with Ms. Smoler, going forward she wanted the agreement to be in writing.

(Meister Decl., Ex. 1 at 87-88, Dkt. No. 36; Hathaway Aff., Ex. A at 66, Dkt. No. 31.)  Plaintiff also stated Ms. Wheeler confirmed over the phone that she should expect to receive a written agreement from Ms. Smoler, in direct contradiction to Ms. Wheeler's account of the conversation, but never received said agreement. (Fischer Decl. ¶¶ 41-42, Dkt. No. 35; Hathaway Aff., Ex. A at 76, Dkt. No. 31; Def.'s Resp. to Pl.'s L. R. 56.1(b) Stat. ¶¶ 172-73, Dkt. No. 39.) According to Plaintiff, "After that November 1st phone conversation I heard nothing.  At first, I believed my accommodation request was still pending.  However, by some time in December 2010, I believed that my request for an accommodation was no longer pending and knew it had not been granted." (Fischer Decl. ¶ 43, Dkt. No. 35.)  As a result, Plaintiff claims she acted as if

her request for an accommodation was denied, which led to the further decline of her health and her work performance. (Id. ¶¶ 40, 44; Hathaway Aff., Ex. A at 81, Dkt. No. 31.)

The evidence shows two different accounts of the circumstances surrounding Plaintiff's request for an extension of her accommodation in October of 2010.  Defendant's argument that Plaintiff believed her request was pending and thus, there was only a delay in extending the accommodation is unpersuasive on summary judgment, as it would require the Court to make impermissible factual and credibility determinations. See Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) ("For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility.").  Use of the word "pending" does not, in and of itself, show Plaintiff believed her request for an accommodation would ultimately be granted.  In any event, it is for the fact-finder to sort out what Plaintiff meant when she said she thought her request was "pending," and whether the extension was, in fact, granted.  Because there is no evidence of a written agreement and the record shows conflicting accounts of the circumstances surrounding the extension, the jury, not the Court, must determine if Defendant provided an accommodation after October 11, 2010.

Alternatively, Plaintiff asserts a violation of the Rehabilitation Act on the grounds that she was terminated solely because of her disability.  Defendant has put forth a potentially legitimate explanation for Plaintiff's termination, namely her failure to file several briefs in a timely fashion.  Yet, Plaintiff argues she defaulted because her accommodation was not extended, which led to a worsening of her condition and resulted in an inability to meet deadlines.  Having already found factual issues cloud any determination as to whether the extension was granted, the Court cannot conclude as a matter of law that Plaintiff's performance

issues were not the result of Defendant's failure to provide a reasonable accommodation. See Teahan v. Metro-N. Commuter R.R. Co., 951 F.2d 511, 517 (2d Cir. 1991) (holding where an employee's performance issues are caused only by conduct manifesting the employee's disability, the employee was terminated solely by reason of his disability under the Act.). Plaintiff stated after October of 2010, she worked as if her accommodation was denied and experienced what she described as the worst period of her health. (Meister Decl., Ex. 1 at 183-84, 261, Dkt. No. 36; Fischer Decl. ¶¶ 40, 55, Dkt. No. 35.)  Dr. Levine and Dr. Plachta indicate a decline or regression in Plaintiff's health around the same time. (Meister Decl., Ex. 2 at 76-77, Dkt. No. 36; Hathaway Reply Aff., Ex. O at 94-95, Dkt. No. 38.)  There is sufficient evidence to raise a question of fact as to whether Plaintiff's sub-standard performance was caused by her disability and if so, the extent of that causal connection.

The Court's review of the record shows there are genuine issues of material fact as to whether a reasonable accommodation allowed Plaintiff to perform the essential functions of her job, and whether Plaintiff was granted an extension of her accommodation in October of 2010. As such, Defendant's Motion for Summary Judgment as to the Rehabilitation Act claim is DENIED.

## C.  *State Law Claim*

The second claim in the Complaint alleges a violation of New York State Human Rights Law.  Defendant successfully argues the Eleventh Amendment precludes this claim.  The Eleventh Amendment bars suits for damages in federal court against states, and by extension state agencies, absent their consent or congressional abrogation of immunity.  Contrary to Plaintiff's contention, New York did not waive its immunity in enacting the Human Rights Law.

13

Shanahan v. New York, No. 10 Civ. 0742, 2011 WL 223202, at *11 (S.D.N.Y. Jan. 24, 2011);

Heba v. N.Y. State Div. of Parole, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007); Rumain v. Baruch

Coll., No. 06 Civ. 8256, 2007 WL 1468885, at *2 (S.D.N.Y. May 18, 2007).  Other courts have

found reliance on the case cited by Plaintiff, Koerner v. State of New York, 62 N.Y.2d 442

(1984), equally unavailing. See Small v. Caiola, No. 96 Civ. 7945 (LMM), 2000 WL 781080, at

*2 (S.D.N.Y. June 19, 2000) ("Nowhere in Koerner is there any support for finding a waiver of

New York's Eleventh Amendment immunity under the [Human Rights Law]."); Pratesi v. N.Y.

State Unified Court Sys., No. 08–4828 (DRH)(MLO), 2010 WL 502950, at *5 (E.D.N.Y. Feb. 9,

2010) ("Plaintiff's reliance on [Koerner] is misplaced.  Koerner concerned common law

sovereign immunity and not Eleventh Amendment immunity.").  Defendant's Motion for

Summary Judgment as to the second claim under New York State Human Rights Law is

GRANTED.

## III.     Conclusion

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED in-part** and

**DENIED in-part**.  Plaintiff's second cause of action under § 297(9) of New York State Human

Rights Law is **DISMISSED** as barred by the Eleventh Amendment.

**SO ORDERED.**

Dated:      **New York, New York**
            **September 25 , 2013**

**ANDREW L. CARTER, JR.**
**United States District Judge**