```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAROL FISCHER,                                             :
                    Plaintiff,                             :    12-CIV-0421 (ALC)(RLE)
          v.                                               :
                                                           :    AMENDED COMPLAINT
NEW YORK STATE DEPARTMENT OF LAW,                          :
the Office of the Attorney General of the                  :    JURY TRIAL
State of New York, a division of the                       :    DEMANDED
New York State Department of Law,                          :
                    Defendant.                             :
-----------------------------------------------------------X
```

Plaintiff CAROL FISCHER, by her attorneys Pedowitz & Meister, LLP, alleges as follows:

## PARTIES

1.      Plaintiff, Carol Fischer ("Fischer"), an attorney licensed in New York State, resides in New York, New York.

2.      Defendant, the New York State Department of Law, also known as the Office of the Attorney General ("OAG"), is a division of the New York State government with an office in downtown Manhattan.

3.      The OAG employs over 600 lawyers and over 2,000 other individuals, including forensic accountants, legal assistants, scientists, investigators and support staff.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A § 794 (the "Rehabilitation Act"). This Court has supplemental jurisdiction of the claim arising under the New York State Human Rights Law, Executive Law § 296 et seq. (the "Human Rights Law"), pursuant to 28 U.S.C. §1367(a) in that the New York State law claim is so related to Plaintiff's

Rehabilitation Act claim as to form the same case or controversy under Article III of the United States Constitution.

5. At all relevant times the OAG was receiving Federal financial assistance.

6. The OAG is therefore subject to the provisions of the Rehabilitation Act, 29 U.S.C.A § 794.

7. As the unlawful employment practices complained of herein occurred, and Defendant regularly does business, within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

8. Fischer is an accomplished attorney.

9. Fischer worked for the OAG for over 10 years, first joining the OAG in November 1999. Fischer worked in the OAG's Appeals Division where she acted as principal attorney for the State of New York on numerous appellate cases. Fischer's job responsibilities included researching and analyzing case law, writing legal briefs, and making oral arguments in front of state and federal appellate courts.

10. In April 2002, after a contracting cellulitis, a severe viral infection of the skin and subcutaneous tissue, Fischer was diagnosed with myalgic encephalomyelitis, commonly known as Chronic Fatigue Syndrome ("CFS"). As a result of her CFS, Fischer suffered from recurrent, intense fatigue, difficulty concentrating, chronic muscle and joint pain, severe migraine-like headaches and a sore throat.

11. Notwithstanding her CFS, Fischer could perform the essential functions of her job (*i.e.* research, analysis, writing and periodic court appearances) with an accommodation that

would permit her to work from home for several days a month.

12.     In 2003, Fischer submitted a letter from her doctor addressed to Kathy McGrath, the OAG's ADA Coordinator, describing Ms. Fischer's condition and requesting that Ms. Fischer receive a medical accommodation that would enable her to work from home several days a month. On August 25, 2003, the OAG granted an accommodation to work from home up to three days a month for a three-month trial period.

13.     Fischer accepted and worked at home three days per month, working at the office for the balance.

14.     Following the initial trial period, Fischer submitted a new doctor's letter asking that the accommodation be extended. The OAG granted this request and permitted Fischer to work from home three days a month for a period of six months.

15.     At the end of that six month period, Fischer submitted another doctor's note with an update on her condition and requesting that an accommodation be extended for another six months. Again, the OAG granted this request and permitted Fischer to work from home three days a month for a period of six months. Thereafter, each six months, Fischer submitted a doctor's note describing the current status of her condition to the OAG's ADA coordinator asking for an accommodation and until October 2010, each time the OAG received the doctor's letter, it granted her an accommodation. Thus OAG gave Ms. Fischer an accommodation for over seven (7) years.

16.     During this seven year period, while working from home three days a month and in the office for the balance, Fischer performed her role as an Assistant Attorney General.

17.     During this seven year period, Fischer received positive performance evaluations from her supervisors, successfully completed many challenging briefs and oral arguments and

3

won many cases for the State. Fischer even continued to perform well following OAG's reduction in staff, after which she was forced to take on a heavier case load.

18. In July 2009, however, Ms. Fischer's CFS flared up, causing her to be intensely ill and out of work for several days.

19. As a result of her illness, Ms. Fischer missed a filing deadline in one of her assigned appeals, *Caroselli v. Curci*, causing a default.

20. Once the OAG discovered the default, they asked Ms. Fischer about the circumstances surrounding the default. Ms. Fischer informed the OAG that she failed to meet this deadline due to her medical condition.

21. Despite being put on notice that Ms. Fischer's disability was interfering with her ability to perform her job, the OAG never engaged in an interactive process with Ms. Fischer or reevaluated Ms. Fischer's accommodation to determine if it was still reasonable in light of the *Curci* default and her noticeably deteriorating condition.

22. After the *Curci* default, the OAG continued to only grant Ms. Fischer an accommodation of working from home three days per month through October 2010. A 2010 accommodation agreement signed by Ms. Fischer and the OAG stated that her accommodation would be "for the six month period that commenced on Monday, April 12, 2010, and that shall conclude on Monday, October 11, 2010."

23. Pursuant to the accommodation agreement, in October 2010, Ms. Fischer's accommodation request came up for renewal. As was the case in the 14 prior times that she had requested an accommodation, Fischer submitted a letter from her doctor describing her condition and asking that she be permitted to work from home several days a month.

24. This time, however, without reason or explanation, the OAG did not respond at all

to Ms. Fischer's request for accommodation.

25. The OAG did not communicate with Ms. Fischer about her request or enter into an interactive process with Fischer to see how it could accommodate her condition.

26. The OAG merely failed to grant Ms. Fischer's request for accommodation.

27. Since the prior accommodation agreement was no longer in effect, Ms. Fischer was no longer able to work at home, and thus she began to report to work at the OAG office on a daily basis. During October and November 2010, Ms. Fischer kept up with her case load, and continued to receive positive feedback from her supervisors.

28. However, the increased strain of having to go to work in the office on a daily basis caused the symptoms of her CFS condition to intensify.

29. In or about December 2010, Ms. Fischer's condition deteriorated drastically. She suffered from extreme exhaustion and severe muscle pains. As a result, she had difficulty going to work on a daily basis and consequently began missing time at work. Despite her illness, Fischer saw to it that her work was completed and that, where necessary, time extensions were obtained.

30. In March 2011, Fischer, at the recommendation of her doctors, went on unpaid medical leave. Fischer coordinated with the OAG to see that her case load was being managed properly in her absence.

31. In April 2011, while she was still out on medical leave, OAG terminated Ms. Fischer's employment.

32. Despite her efforts to find a new position, Ms. Fischer has been unable to do so.

33. Due to the OAG's failure to enter into an interactive process to determine what should be a reasonable accommodation and failure to grant of Ms. Fischer a reasonable

5

accommodation, Fischer has suffered damages.

### CLAIM (Violation of the Rehabilitation Act)

34. Fischer repeats and realleges the averments of paragraphs 1 through 33, inclusive, of this Complaint.

35. At all times herein mentioned, Fischer was an employee within the meaning of the Rehabilitation Act, protected against discrimination on the basis of her disability.

36. At all times herein mentioned, the OAG was an employer within the meaning of the Rehabilitation Act and as such was prohibited from discriminating in employment decisions on the basis of physical disability.

37. At all relevant times, Fischer was a qualified individual with a disability as Fischer's CFS substantially limited her major life activities. Despite this disability, with a reasonable accommodation, Fischer could still perform the essential functions of her job, as she had successfully for over seven years.

38. By failing to provide Fischer with proper accommodation allowing her to work from home a number of days a month and by subsequently terminating her employment, the OAG discriminated against Fischer on the basis of a physical handicap, in violation of the Rehabilitation Act, 29 U.S.C.A. § 794.

39. By virtue of the foregoing, Fischer has suffered and continues to suffer economic loss, and other compensable injuries in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a Judgment in her favor and against the OAG:

a) awarding Plaintiff compensatory damages, back pay, front pay, and loss of benefits in an amount to be proven at trial;

b) awarding Plaintiff the costs of this action, interest, and attorney's fees; and

c) granting Plaintiff such other and further relief as this Court deems necessary and proper.

PEDOWITZ & MEISTER, LLP

By: _____

Robert A. Meister
Marisa H. Warren
Attorneys for Plaintiff
570 Lexington Avenue – 18th Floor
New York, NY 10022
(212) 403-7330
Robert.meister@pedowitzmeister.com
Marisa.warren@pedowitzmeister.com

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.